UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
KIMBERLY E. ANDREWS, Regional Director of the    *
Fourth Region of the NATIONAL LABOR              *
RELATIONS BOARD, for and on behalf of the        *
NATIONAL LABOR RELATIONS BOARD,                  *
                                                 *
                                                 *
                                                 *
                Petitioner,                      *
                                                 *
          v.                                     *   Civil No.  2:25-cv-04515
                                                 *
NEW VITAE, INC. d/b/a NEW VITAE                  *
WELLNESS AND RECOVERY                            *
                                                 *
                Respondent.                      *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

**PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

This cause came to be heard upon the verified Petition of Kimberly E. Andrews, Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), for and on behalf of the Board, for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S.C. Sec. 160(j)); (herein called the Act), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an Order to Show Cause why injunctive relief should not be granted as prayed in the Petition.

The Court has fully considered the petition, evidence and arguments of counsel and upon the entire record, the Court makes the following:

# **FINDINGS OF FACT**

1. Petitioner is the Regional Director of the Fourth Region of the Board, an agency of the United States, and files this Petition for and on behalf of the Board.

2. Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act. 29 U.S.C. § 160(j).

3. (a) On August 25, 2023, District 1199(C), National Union of Hospital and Health care Employees, AFSCME, AFL-CIO (herein called the Union), pursuant to the provisions of the Act, filed a charge with the Board in Case 4-CA-324629 alleging that Respondent, New Vitae, Inc., d/b/a New Vitae Wellness and Recovery, an employer within the meaning of Section 2(2) of the Act, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act. A copy of the charge in Case 4-CA-324629 is attached hereto as Exhibit 1 and made a part hereof.

(b) On October 23, 2023, the Union filed a charge in Case 4-CA-328382, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. A copy of the charge in Case 4-CA-328382 is attached hereto as Exhibit 2 and made a part hereof.

(c) On November 8, 2023, the Union filed first amended charge in Case 4-CA-328382, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act. A copy of the charge in Case 4-CA-328382 is attached hereto as Exhibit 3 and made a part hereof.

(d) On November 4, 2024, the Union filed a second amended charge in Case 4-CA-328382, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act. A copy of the second amended charge in Case 4-CA-328382 is attached hereto as Exhibit 4 and made a part hereof.

(e) On October 27, 2023, the Union filed a charge in Case 4-CA-328762, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (4) of the Act. A copy of the charge in Case 4-CA-328762 is attached hereto as Exhibit 5 and made a part hereof.

(f) On December 4, 2023, the Union filed first amended charge in Case 4-CA-328762, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3), (4) and (5) of the Act. A copy of the amended charge in Case 4-CA-328762 is attached hereto as Exhibit 6 and made a part hereof.

(g) On December 13, 2023, the Union filed a second amended charge in Case 4-CA-328762, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3), (4) and (5) of the Act. A copy of the charge in Case 4-CA-328762 is attached hereto as Exhibit 7 and made a part hereof.

(h) On November 4, 2024, the Union filed a third amended charge in Case 4-CA-328762, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act. A copy of the charge in Case 4-CA-328762 is attached hereto as Exhibit 8 and made a part hereof.

(i) On August 9, 2024, the Union filed a charge in Case 4-CA-347986, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act. A copy of the charge in Case 4-CA-347986 is attached hereto as Exhibit 9 made a part hereof.

(j) On August 26, 2024, the Union filed a first amended charge in Case 4-CA-347986, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act. A copy of the first amended charge in Case 4-CA-347986 is attached hereto as Exhibit 10 and made a part hereof.

(k)     On March 17, 2025, the Union filed a second amended charge in Case 4-CA-347986, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act.  A copy of the second amended charge in Case 4-CA-347986 is attached hereto as Exhibit 11 and made a part hereof.

(l)     On November 4, 2024, the Union filed a charge in Case 4-CA-354024, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act.  A copy of the charge in Case 4-CA-354024 is attached hereto as Exhibit 12 and made a part hereof.

(m)     On November 19, 2024, the Union filed a first amended charge in Case 4-CA-354024, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act.  A copy of the first amended charge in Case 4-CA-354024 is attached hereto as Exhibit 13 and made a part hereof.

(n)     On December 23, 2024, the Union filed a second amended charge in Case 4-CA-354024, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act.  A copy of the second amended charge in Case 4-CA-354024 is attached hereto as Exhibit 14 and made a part hereof.

(o)     On March 17, 2025, the Union filed a third amended charge in Case 4-CA-354024, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act.  A copy of the third amended charge in Case 4-CA-354024 is attached hereto as Exhibit 15 and made a part hereof.

4.     On April 8, 2025, based upon the charges in Cases 4-CA-324629, 04-CA-328382, 04-CA-328762, 04-CA-347986, and 4-CA-354024 referred to above, the General Counsel of the Board, on behalf of the Board, by Petitioner, issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing (herein, the Complaint), pursuant to

Section 10(b) of the Act, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act. A copy of the Complaint is attached hereto as Exhibit 16 and made a part hereof.

5. On April 22, 2025, Respondent, by its Counsel, filed an Answer to the Complaint. A copy of the Answer is attached as Exhibit 17.

6. An administrative hearing on the allegations contained in the Complaint was held before Administrative Law Judge Paul Bogas on May 20 and 21, 2025, on which dates witness testimony and documentary evidence was adduced, including evidence bearing upon the merits of the Complaint allegations and the equitable factors underlying the need for injunctive relief.

7. There is a strong likelihood that the allegations set forth in Petitioner's Complaint are true, and that Respondent has committed serious violations of Section 8(a)(1), (3), and (5) of the Act, as alleged therein.[1] Specifically, the record establishes the likelihood that the Board will find that Respondent violated Section 8(a)(1), (3) and (5) of the Act affecting commerce within the meaning of Section 2(6) and (7) of the Act. More particularly, in support thereof, and of the request for injunctive relief herein, Petitioner, upon information and belief, shows as follows:

(a) At all material times, Respondent has been a corporation with an office and place of business in Limeport, Pennsylvania, and has been engaged in operating residential behavioral health treatment facilities in Pennsylvania, including those located at 5644 Walnut

---

[1] For reasons relating to both efficiency and efficacy, there are allegations from the Complaint that were intentionally excluded from the Petition for an Injunction. As such, the procedural history described herein relates only to allegations specifically raised in the Petition for Injunction and does not present all complaint allegations pursued by Counsel for the Acting General Counsel in the underlying Complaint.

Street, 5646 Walnut Street, and 1909 South 6th Street in Philadelphia, Pennsylvania (collectively, Respondent's Philadelphia facilities).

(b) During the past year, Respondent, in conducting its operations described above in subparagraph (a), derived gross revenues in excess of $250,000, and purchased goods and materials valued in excess of $5,000 directly from points outside the Commonwealth of Pennsylvania.

(c) At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act, and has been a health-care institution within the meaning of Section 2(14) of the Act.

(d) At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

(e) At all material times, the following individuals have held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Adam Devlin | - | Owner and Chair of the Board of Directors |
| Judith Yanacek | - | President |
| Michelle Beck | - | Chief Financial Officer |
| Samantha Perch | - | Director of Human Resources (until about July 16, 2023); Human Resources Program Partner (since about July 16, 2023) |
| Maribel Poretta | - | Director of Human Resources (since about July 16, 2023) |
| Taliah Mason | - | Director of Wellness |
| Samara Speakes | - | Administrator |
| Yardley Georges | - | Human Resource Generalist Representative |

(f) At all material times, the following individuals have been agents of Respondent within the meaning of Section 2(13) of the Act:

    (i)  Kimberly Wiseman – Consultant, McCloskey Partners, LLC;

    (ii)  Respondent's labor counsel

  (g)  The following employees of Respondent (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time, regular part-time, and per-diem Registered Nurses employed by the Employer at its facilities located at 5644 Walnut Street, 5646 Walnut Street, and 1909 South 6th Street in Philadelphia, Pennsylvania, excluding all other employees, office clerical employees, confidential employees, managerial employees, guards and supervisors as defined by the Act.

  (h)  On March 16, 2023, a representation election was conducted among the employees in the Unit and, on May 5, 2023, the Union was certified as the exclusive collective-bargaining representative of the Unit.

  (i)  At all times since March 16, 2023, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Unit.

  (j)  About November 1, 2024, Respondent:

    (i)  Laid off Unit employees; and

    (ii)  Subcontracted the work previously performed by the Registered Nursesi in the Unit to contractors U.S. Medical Staffing, LLC and Two Magnets, Inc. d/b/a Clipboard Health.

    (iii)  Respondent engaged in the conduct described above in subparagraphs (i) and (ii) because Unit employees formed, supported and assisted the Union and engaged in concerted activities, and to discourage other employees from engaging in these activities.

    (iv) The subjects set forth in subparagraphs (i) and (ii) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

    (v) Respondent engaged in the actions described above in subparagraphs (i) and (ii) without prior notice to the Union, and without affording the Union an opportunity to bargain with Respondent with respect to this conduct.

  (k) (By the conduct described above in paragraphs j(i) through j(iii), Respondent has been discriminating in regard to the hire or tenure of terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

  (l) By the conduct described above in paragraphs j(i), j(ii), j(iv) and j(v), Respondent has been failing and refusing to bargain in collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act.

  (m) The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

 8. Respondent's unfair labor practices, as described above in paragraph 7, have and are continuing to substantially and irreparably harm employees of Respondent in the exercise of the rights guaranteed them by Section 7 of the Act. More particularly, upon information and belief, Respondent's unfair labor practices have caused and will continue to cause the following irreparable harm.

  (a) Respondent's unremedied unfair labor practices undermine employees' support for the Union as their collective-bargaining representative.

(b) Without interim reinstatement of the laid off employees, backpay for their wages and benefits will continue to run. The dollar amount of that backpay may reach a point at which Respondent is either unable to pay the backpay or is in a position where its continued financial viability is at risk.

(c) Without interim rescission of the unilaterally subcontracted work and the interim reinstatement of the laid off bargaining unit employees, it may be fairly anticipated that employee support for and confidence in the Union will erode. Such erosion is inevitable over time and stems from the likely impression by employees of the ineffectiveness of the Union because Respondent subcontracted all unit work and laid them off without bargaining with the Union. This loss of the bargaining unit's support cannot be restored by a final Board order.

(d) Without interim rescission of the unilaterally subcontracted work and interim reinstatement of Unit employees, the entire bargaining Unit may "scatter to the winds" and obtain other employment during the delay inherent in the Board's administrative adjudication. Thus, they will be unavailable to accept reinstatement offered pursuant an eventual Board order, thus rendering a Board remedy meaningless.

(e) As a result of Respondent's unremedied unfair labor practices, the Union has entirely lost its ability to bargain on behalf of employees who have freely chosen the Union to represent them, and, without interim relief, employees are deprived of the benefits of any collective bargaining pending the Board's decision. Interim relief is thus necessary to salvage some of the bargaining equality that existed prior to Respondent's unfair labor practices.

(f) Without interim rescission of the unilaterally subcontracted work and the interim reinstatement of Unit employees, the delay inherent in completing the

adjudicatory process will result in the frustration of the Board's ability to remedy the unfair labor practices because Respondent's unfair labor practices will have already succeeded, creating an irreparable and undue bargaining advantage for Respondent upon the Board's final order.

9. In balancing the equities in this matter, the irreparable harm to the collective-bargaining process, to the entire bargaining Unit, to the public interest, and to the purposes and policies of the Act, if injunctive relief is not granted, clearly outweighs any harm that the granting of such injunctive relief will have on Respondent, particularly in light of the strong likelihood of Petitioner's success on the merits.

(a) The primary remedies Petitioner seeks will require Respondent to take the following affirmative action: (1) rescind the subcontracting of unit work; (2) offer reinstatement to the laid off bargaining unit employees; and (3) recognize and bargain with the Union.

(b) The interim restoration of the subcontracted work and bargaining Unit positions: (1) will not disrupt Respondent's business where the Unit work still exists and where both employees are experienced and familiar with Respondent's operation; (2) will not work an economic hardship upon Respondent, whose relationship with the subcontractor employer is "at will" and there is no financial penalty for Respondent to rescind its subcontract of Unit work; and (3) does not require any expenditure of capital and is not unduly burdensome.  It is as simple as an email to subcontractors Clipboard and US Medical rescinding the work and to bargaining unit employees offering reinstatement.

(c) Interim bargaining with the Union only requires Respondent to bargain in good faith; it does not compel Respondent to agree to any specific term or condition

of employment advanced by the Union. Moreover, any agreement reached between the parties during such interim bargaining can contain a condition subsequent to take into account the unlikely possibility of the Board's ultimate refusal to grant a final bargaining order remedy. The cost of interim bargaining in terms of time and money, which is borne equally by both parties, is not so great as to defeat Petitioner's request for an interim bargaining order here.

10. Petitioner has a strong likelihood of succeeding on the merits of the allegations in the Complaint. Subcontracting the work of the entire bargaining unit is a well-established mandatory subject of bargaining. A decision to subcontract requires prior notice to and an opportunity for the Union to bargain. Petitioner's likelihood of success on the merits is enhanced by Respondent's admission, in its Answer, that this is a mandatory subject of bargaining.

11. Unless injunctive relief is immediately obtained, it can fairly be anticipated that employees will permanently and irreversibly lose the benefits of the Board's processes and the exercise of statutory rights, a harm which cannot be remedied in due course by the Board.

12. There is no adequate remedy at law for the irreparable harm caused by Respondent's unfair labor practices, described above in paragraph 7.

13. Unless Respondent's unfair labor practices described above in paragraph 7 are immediately enjoined and restrained, Respondent will continue to engage in those acts and conduct, or similar acts and conduct constituting unfair labor practices during the proceedings before the Board and during any subsequent proceedings before a United States Court of Appeals, with the predictable result that important provisions of the Act and of public policy will be thwarted before Respondent can be placed under legal restraint through the regular procedure of a Board order and enforcement decree, seriously interfering with, restraining, and

coercing employees of the Respondent in the exercise of their rights under Section 7 of the Act. Further, it may be fairly anticipated that by the time a Board order can be obtained against Respondent, it will not be possible to restore the pre-unfair labor practice status quo.

14. Upon information and belief, to avoid the serious consequences set forth above, it is essential, appropriate, just and proper, for the purposes of effectuating the policies of the Act and of avoiding substantial, irreparable and immediate injury to such policies, to employees, and to the public interest, and in accordance with Section 10(j) of the Act, that, pending the final disposition of the matters involved herein pending before the Board, Respondent be enjoined and restrained from the commission of the acts and conduct described herein, similar or related acts or conduct or repetitions thereof, and also be ordered to take the affirmative action set forth below.

## **CONCLUSIONS OF LAW**

1. This Court has jurisdiction of the parties and of the subject matter of the proceeding, and under Section 10(j) of the Act, is empowered to grant injunctive relief.

2. There is a substantial likelihood that Petitioner will, in the underlying administrative proceedings in Cases 04-CA-324629 establish that:

> (a) Respondent is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act, and has been a health-care institution within the meaning of Section 2(14) of the Act, and within the Eastern District of Pennsylvania.
>
> (b) The Union has been a labor organization within the meaning of Section 2(5) of the Act.

      (c)      Respondent has engaged in unfair labor practices within the meaning of Section 8(a)(1), (3), and (5) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act, as set forth in Section 1(b) thereof.

      (d)      To preserve the issues for orderly determination as provided in the Act, it is appropriate, just and proper, that pending the final disposition of the matters herein involved before the Board, Respondent, it officers, representatives, agents, servants, employees, and all members and persons acting in concert or participation with them, be enjoined as set forth hereinafter in the Order Granting Section 10(j) Injunction in this case.

Done at Philadelphia, Pennsylvania, this ____ day of _____, 2025.

_____
UNITED STATES DISTRICT JUDGE
District Court for the Eastern District of Pennsylvania