IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY E ANDREWS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NEW VITAE, INC. d/b/a NEW | : | NO. 25-4515 |
| VITAE WELLNESS AND RECOVERY | : | |

MEMORANDUM

Bartle, J.                                          January 27, 2026

Kimberly E. Andrews, Regional Director of the Fourth
Region of the National Labor Relations Board ("NLRB"), has
petitioned this court for appropriate temporary relief or
restraining order under Section 10(j) of the National Labor
Relations Act ("NLRA"), 29 U.S.C. § 160(j), against the
Respondent, New Vitae, Inc. d/b/a New Vitae Wellness and
Recovery ("New Vitae").

Petitioner alleges that New Vitae engaged in acts
intended to chill union support, including laying off all
members of a newly certified bargaining unit and subcontracting
the unit's work without proper notification or bargaining, in
violation of Sections 8(a)(1), (3), and (5) of the NLRA.  29
U.S.C. §§ 158(a)(1), (3), (5).  New Vitae denies that it has
violated the law.

Petitioner requests that this court direct New Vitae to offer reinstatement to the employees it laid off and cease and desist all coercive conduct that interferes with employees' rights to form and join unions pursuant to Section 7 of the NLRA, 29 U.S.C. § 157.

In 2023 and 2024, District 1199C, National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO (the "Union") filed unfair labor practice charges with the NLRB against New Vitae in five separate cases. Regional Director Andrews then issued an administrative Consolidated Complaint against New Vitae on April 8, 2025. On May 20 and 21, 2025, the parties appeared before Administrative Law Judge Paul Bogas to present evidence and argue the merits of the underlying unfair labor practice charges. On August 7, 2025, before Judge Bogas handed down his ruling, the petitioner filed the pending action in this court for preliminary relief and restraining order to prevent further harm while the matter remains pending before Judge Bogas and the NLRB, a process that can take years. Judge Bogas issued findings of fact and conclusions of law and a recommended order on December 2, 2025. Judge Bogas' recommended order is not effective until it is adopted or amended by the NLRB upon consideration of exceptions filed by the parties. The parties anticipate that any final decision by the NLRB will not be forthcoming until well into the future. Thus petitioner, as

2

permitted by the NLRA, seeks preliminary relief and restraining order pending a final decision by the NLRB.

I

Under Section 10(j), this court may grant preliminary relief "as it deems just and proper."  29 U.S.C. § 160(j).  The court must consider the traditional equitable criteria in deciding whether to grant a preliminary injunction.  Starbucks Corp. v. McKinney, 602 U.S. 339, 345 (2024).  Petitioner must make a clear showing that: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in petitioner's favor; and (4) an injunction is in the public interest.  Id. at 345-46; Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Section 8 of the NLRA, 29 U.S.C. § 158, outlines employer actions that constitute unfair labor practices.  They include conduct by an employer:

- "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7 of the NLRA (29 U.S.C. § 158(a)(1));

- "to encourage or discourage membership in any labor organization" by "discrimination in regard to

hire or tenure of employment or any term or condition
of employment" (Id. § 158(a)(3)); and

- "to refuse to bargain collectively with the
  representatives of [its] employees" (Id. § 158(a)(5)).

The parties agree that the court may decide this
matter on the administrative record, as supplemented.  Based on
that record, the court makes the following findings of fact and
conclusions of law.

II

New Vitae operates residential treatment facilities
("RTFAs") for adult males who require treatment after release
from hospitals or prisons in Pennsylvania.  Three of those
facilities are in South and West Philadelphia.  New Vitae staffs
its RTFAs with registered psychiatric nurses ("RNs"), licensed
practical nurses ("LPNs"), therapists, care coordinators, and
mentors.  Prior to unionization, some of its nurses were
employees while others were supplied by outside staffing
agencies.

In September 2022, Danita Alexander, a per diem RN,
and Myra Heard, a full-time RN, at the West Philadelphia
facility wrote a letter to New Vitae's Human Resources
department.  The letter complained of low morale and the unfair
pay discrepancy between per diem, full-time, and part-time

nurses.  It also said that the nurses wanted a pay increase.
Alexander also spoke with other nurses about signing cards to
authorize a union to negotiate employment terms and conditions
on their behalf.  An undated document written prior to the March
2023 unionization vote by an unknown author but produced by New
Vitae notes that Alexander along with two others "are the only
names that keep coming up for voting yes" and that Alexander
should be excluded from an upcoming forum to discuss
unionization with New Vitae leadership.

The nurses voted to unionize in March 2023.  Adam
Devlin, the owner of New Vitae, emailed the nurses on March 31,
2023 that New Vitae had challenged the union election results.
Despite the challenge, the Union was certified by the Regional
Director of the NLRB on May 5, 2023 as the exclusive collective-
bargaining representative of all "full-time, regular part-time,
and per-diem Registered Nurses employed by" New Vitae at its
Philadelphia locations (the "Unit").  LPNs were not included in
the Unit.  New Vitae's Philadelphia locations are its only
facilities that are unionized.

New Vitae suspended Alexander for four days beginning
on May 4, 2023.  After her return to work, New Vitae withheld
her pay for shifts missed during her suspension and for two
mandatory meetings, reduced her work hours just days after the

Union was certified, gave her a negative performance appraisal, and ultimately terminated her employment on October 25, 2023. In addition, after her return to work, New Vitae's Director of Human Resources, Samantha Perch, directed Alexander not to discuss complaints about working conditions with her co-workers.

New Vitae states that it suspended Alexander on May 4, 2023, because she declined to attend a meeting on May 3 to follow up on a voluntary survey or "stay interview." The court finds this reasoning to be specious. New Vitae did not advise Alexander that the meeting was mandatory. Nothing in the record establishes that it had ever disciplined anyone else under comparable circumstances, and Alexander agreed to meet once she was informed that the meeting was mandatory. New Vitae also failed to compensate Alexander for two mandatory meetings she attended on May 5 and May 8, 2023. It made no showing why it deviated from its usual practice of compensating employees for mandatory meetings. The court finds that it did so because of her protected union activities.

New Vitae additionally reduced Alexander's work hours by approximately 30 percent following her return to work after completing her suspension on May 8, 2023. New Vitae did not articulate a reason for this reduction. The court finds it was

the result of New Vitae's hostility towards Alexander's
protected union activities.

Furthermore, Taliah Mason, Alexander's supervisor,
gave a lower rating for Alexander in "accountability" based on
her suspension.  Although New Vitae's HR Director, Maribel
Poretta, orally assured Alexander that the rating would be
adjusted, no evidence was presented that it ever was.  No other
reason was given for the lower rating.

New Vitae's justification for Alexander's termination
on October 25, 2023, was grounded in Poretta's crediting
coworkers' complaints that Alexander was unable to work
cooperatively with them.  This justification is not credible.
The investigation by Poretta into those complaints mostly relied
on anonymous sources and was not completed until after Alexander
was fired.  Alexander had never been previously disciplined, and
her performance had been rated high enough to qualify for salary
raises.  Significantly, New Vitae's contemporaneous refusal to
provide Alexander with a reason for the decision to terminate
shows anti-union animus and was at odds with its established
practice of providing documentation on which any disciplinary
action was based.

Underlying these events related to Alexander were New
Vitae's efforts to challenge the union certification, which

resulted in a delay in bargaining.  New Vitae requested the NLRB to review the decision to certify the union.  This request was denied on June 22, 2023.  New Vitae then petitioned the Court of Appeals for the Third Circuit for review of the decision, but the petition was dismissed for lack of jurisdiction on August 16, 2023.

After further delays, which cannot be solely placed at the feet of New Vitae, the Union and New Vitae agreed to begin bargaining on October 10, 2024.  During the October 10 meeting, the Union and New Vitae reached a tentative agreement on some bargaining items.  Nonetheless, they failed to reach an agreement on New Vitae's use of non-unit nurses from outside staffing agencies.

The parties agreed to meet again on October 24, 2024. However, on October 23, 2024, Guy Vilim, counsel for New Vitae, requested that the next day's bargaining session be delayed because New Vitae was "contemplating re-working the workforce at its RTFAs in ways that could materially affect [the parties'] bargaining."

At the beginning of the November 1, 2024 meeting, counsel for New Vitae informed the Union negotiators that New Vitae had decided to lay off all bargaining unit nurses later that day.  He further stated that New Vitae had already

subcontracted the entire bargaining unit's work to outside staffing agencies.  He provided the Union with a document titled "Employer Proposal November 1, 2024" which stated that all unit nurses would be laid off at 7:00 P.M. that evening and detailed a proposal for severance payments, continued insurance coverage, vacation pay, and eligibility for recall.  New Vitae's HR Director testified at the administrative hearing before Judge Bogas in May 2025 that the decision to layoff and subcontract was made before the Union's representatives were notified on November 1.  Furthermore, New Vitae began using only contract nurses on November 1, 2024, the very day that the bargaining meeting took place.

Kathleen Bichner, the attorney representing the Union, sent Vilim an email noting that subcontracting is a mandatory subject of bargaining and demanding bargaining over New Vitae's decision to subcontract.  Vilim countered that New Vitae was not changing any of its practices by subcontracting because it had "always contracted for nurses at the RFTAs in Philadelphia."  In subsequent communications, Vilim acknowledged that subcontracting is a legitimate subject of bargaining "looking into the future."  He further asked the Union to address New Vitae's severance proposal made on November 1.

At the hearing before Judge Bogas, Poretta testified that she sent a text to unit nurses on November 3, 2024, informing them of New Vitae's layoff and subcontracting decision. The text notes that New Vitae was "obliged by law to bargain with the union over how layoffs will occur," but that "[a]s of this writing, no one has been laid off." She added that due to "security reasons," New Vitae would be "using only contract nurses to fill shifts until further notice."

On November 4, Bichner informed Vilim that the Union had filed unfair labor practices charges based in part on New Vitae's refusal to bargain over the decision to subcontract the unit nurses' work. She also requested information explaining why the unit nurses' work was completely subcontracted to an outside agency. She explicitly wrote in a December 18, 2024 email that the Union was also demanding bargaining over New Vitae's decision to lay off unit nurses.

Before Judge Bogas, New Vitae attempted to justify the decision to subcontract the unit employees' work by relying on cost savings. Sometime in or around September 2024, Judith Yanacek, President of New Vitae, and Michelle Beck, Vice President of Business Operations, discussed laying off the unit nurses and subcontracting the entirety of their work to an outside staffing agency. In September 2024, Beck created a cost

10

comparison that compares the cost of continuing to employ unit
nurses in New Vitae's Philadelphia facilities with the cost of
using nurses exclusively obtained from outside staffing
agencies.  Yanacek testified that the cost comparison showed New
Vitae would save $102,891 to $276,644 per year by subcontracting
unit nurses' work.

This cost saving is specious.  The analysis assumed
that all unionized nurses received benefits such as health
insurance and workers' compensation.  This was inaccurate.
These benefits were not provided to per diem RNs at all and were
not automatically provided to part-time RNs.  Additionally, the
cost analysis assumed subcontracting unit work previously done
by unionized RNs to less expensive LPNs.  The projected cost
savings also resulted from the elimination of payments to three
supervisory employees who oversaw unit nurses.  Yet the cost
analysis did not explain how switching completely to nurses
provided by outside staffing agencies would eliminate the need
for oversight.  Not surprisingly, after the unionized nurses'
work was subcontracted, New Vitae continued to employ the three
employees responsible for overseeing unit nurses.  Furthermore,
the cost analysis also did not account for the effects of
overtime pay to the subcontracted nurses.  Yanacek and Beck
actually acknowledged in their September 2024 emails that

overtime could negate any cost savings from using an outside staffing agency.

This court finds and concludes that New Vitae has likely committed unfair labor practices in violation of Sections 8(a)(1), (3), and (5) of the NLRA.[1]

III

In determining whether to grant preliminary relief under Section 10(j), this court must first consider whether the petitioner has made a clear showing of a likelihood of success on the merits. Starbucks Corp. v. McKinney, 602 U.S. 339, 345-46 (2024); Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Petitioner is likely to prevail in showing that New Vitae laid off all members of the bargaining unit and subcontracted the unit's work without notifying and bargaining with the Union in violation of Section 8(a)(5) of the NLRA.

---

1    Judge Bogas ruled on December 2, 2025 that New Vitae violated Sections 8(a)(1), (3), and (5) of the NLRA.  The parties have until January 30, 2026 to file exceptions to Judge Bogas' decision.  New Vitae intends to file exceptions.  After Judge Bogas issued his opinion, representatives for the Union and New Vitae discussed setting a date for another bargaining session.  The Union representatives requested that the unit nurses be reinstated and receive backpay before a bargaining session.  New Vitae refused to do so.  The Union and New Vitae have not agreed to meet.

Under Section 8(a)(5), it is unlawful for an employer "to refuse to bargain collectively with the representatives of [its] employees."  29 U.S.C. § 158(a)(5).  An employer violates this section if it does not provide prior notice or a meaningful opportunity to bargain over a mandatory subject of bargaining to a union.  Ciba-Geigy Pharms. Div., 264 NLRB 1013, 1017 (1982), enforced, 722 F.2d 1120 (3d Cir. 1983); Gannett Co., Inc., 333 NLRB 355, 357 (2001).  Subcontracting is a mandatory subject of bargaining if the employer seeks to contract out the same work done by members of a bargaining unit under similar conditions of employment in order to reduce labor costs.  Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 213-15 (1964); Furniture Rentors of Am., Inc. v. NLRB, 36 F.3d 1240, 1246, 1248 (3d Cir. 1994).  If an employer does not give enough notice of a proposal to change a condition of employment to allow for bargaining or indicates that the employer is not open to changing its mind, the employer has merely given notice of a *fait accompli* and does not meet its bargaining obligation.  Gannett Co., Inc., 333 NLRB 355, 357-58 (2001).

Petitioner is correct that New Vitae presented the layoff and subcontracting proposal as a *fait accompli*, instead of a timely notice and genuine offer to bargain.  Emails show that prior to November 1, 2024, New Vitae scheduled contract nurses to complete orientation starting on November 1, 2024.  On

13

November 1, 2024, while New Vitae presented the union with a document titled "Employer Proposal November 1, 2024," it stated that all unit nurses "will be laid off" effective at 7:00 p.m. that very day.  Witness testimony shows that unit nurses were barred from working and only contract nurses worked after that day.  A mere two days later, New Vitae's HR Director informed nurses via text that New Vitae intended to lay them off pending bargaining "over how layoffs will occur," not over whether layoffs would occur.

New Vitae counters that it laid off unit nurses a week after it offered to bargain with the Union on the issue and only after it became clear that the Union would not be willing to bargain since it pursued unfair labor practice charges.  As noted above, the record reflects otherwise.  Because the decision to layoff and subcontract was presented as a *fait accompli*, the Union did not waive bargaining by not immediately requesting to bargain over the decision to layoff and subcontract.  Id. at 357-59; Ciba-Geigy Pharms. Div., 264 NLRB 1013, 1017 (1982).  In any event, the Union took steps to begin bargaining over the issue.  It sought information over the reasoning behind the decision and sent an email on December 18, 2024 explicitly requesting that the parties bargain over the decision to layoff and subcontract. The petitioner has made the

required showing of likelihood of success as required.  See Winter, 555 U.S. at 20.

Petitioner has also shown that it has a likelihood of succeeding on the charge that New Vitae unlawfully subcontracted and laid off the bargaining unit because of animus against union activities in violation of Section 8(a)(3) of the NLRA.  Section 8(a)(3) states that it is an unfair labor practice for an employer "to encourage or discourage membership in any labor organization" by "discrimination in regard to hire or tenure of employment or any term or condition of employment."  29 U.S.C. § 158(a)(3).  To establish that an employment action violates Section 8(a)(3) of the NLRA, petitioner must demonstrate: (1) the terminated unit employees engaged in protected concerted activity or union activities; (2) the employer had knowledge of that activity; and (3) the employer took the employment action because of animus against the union or other protected activity. Wright Line, Inc., 251 NLRB 1083, 1089 (1980), enforced on other grounds, 662 F.2d 899 (1st Cir. 1981), cert. denied, 455 U.S. 989 (1982), approved in NLRB v. Transportation Management Corp., 462 U.S. 393 (1983).  Animus may be inferred from circumstantial evidence including "the timing of the action in relation to the union or other protected conduct; contemporaneous unfair labor practices; shifting, false, or exaggerated reasons offered for the action; failure to conduct a meaningful investigation;

15

departures from past practices; and disparate treatment of the employee." Intertape Polymer Corp., 372 NLRB No. 133, at *7 (Aug. 25, 2023), enforced, No. 23-1831, 2024 WL 2764150 (6th Cir. May 9, 2024); see also Lucky Cab Co., 360 NLRB 271, 274-75 (2014).

If petitioner meets her initial burden to show a violation of Section 8(a)(3), the burden shifts to the employer. Rock Valley Trucking Co., 350 NLRB 69, 70 n.8 (2007) (citations omitted). The employer must show, by a preponderance of the evidence, "that it would have taken the same action even in the absence of the protected conduct." W.F. Bolin Co., 311 NLRB 1118, 1119 (1993).

It is undisputed that the terminated unit employees engaged in protected union activities by being a part of the Union and that New Vitae was aware of such activities. The evidence shows that New Vitae laid off unit employees and subcontracted their work because of animus against the union and protected union activity. First, New Vitae's President and Vice President of Business Operations discussed subcontracting the entirety of the unit's work to an outside staffing agency on September 20, 2024, the exact day New Vitae agreed to set a

bargaining date.[2]  The record demonstrates that New Vitae
committed contemporaneous unfair labor practices against Danita
Alexander, a unit employee who was key to organizing other
nurses.  These unfair labor practices included her suspension,
the withholding of pay for mandatory meetings, an unjustified
poor review, and termination.  Furthermore, New Vitae's
purported cost savings analysis was not only flawed but indeed
pretextual.  Petitioner has made the requisite initial showing.
New Vitae has not met its burden to show it would have taken the
same action in the absence of protected activity.

     Section 8(a)(1) of the NLRA states that it is unlawful
for an employer "to interfere with, restrain, or coerce
employees in the exercise of the rights guaranteed in" Section 7
of the NLRA.  29 U.S.C. § 158(a)(1).  A violation of Section
8(a)(3) by discriminating against employees to discourage
membership in a labor organization and a violation of Section
8(a)(5) by refusing to bargain collectively with employees'
representatives constitute violations of Section 8(a)(1).  See
29 U.S.C. §§ 158(a)(3), (5); Tecnocap, LLC v. NLRB, 1 F.4th 304,
313 (4th Cir. 2021); Exxon Chem. Co. v. NLRB, 386 F.3d 1160,

---

2    Petitioner also notes that this decision was made after a
17-month delay in bargaining.  Again, because both parties
contributed to this delay, the court does not find that this
delay shows that New Vitae held animus against the union or
protected activity.

1164 (D.C. Cir. 2004); Stern Produce Co., Inc. v. NLRB, 97 F.4th

1, 11 n.3 (D.C. Cir. 2024).  Thus, petitioner's obligation under

Section 8(a)(1) has been satisfied.

   The court finds that petitioner has made a clear

showing that she is likely to succeed on the merits on claims

that New Vitae violated Sections 8(a)(1), (3), and (5) of the

NLRA.

   The court must next consider the likelihood of

irreparable harm to the collective bargaining process in the

absence of preliminary relief to determine whether preliminary

relief should be granted.  See Winter, 555 U.S. at 20; Chester

ex rel. NLRB v. Grane Healthcare Co., 666 F.3d 87, 98 (3d Cir.

2011), abrogated by, Starbucks Corp., 602 U.S. 339.  As stated

in Frankl v. HTH Corp.:

> "[W]hile a district court may not presume
> irreparable injury with regard to likely
> unfair labor practices generally,
> irreparable injury is established if a
> likely unfair labor practice is shown along
> with a present or impending deleterious
> effect of the likely unfair labor practice
> that would likely not be cured by later
> relief."

650 F.3d 1334, 1362 (9th Cir. 2011).

Discharge of active and open union supporters, particularly when

the union movement is nascent in a particular workplace, and the

fear of employer retaliation following such terminations "is

exactly the irreparable harm contemplated by § 10(j)".  Pye ex
rel. NLRB v. Excel Case Ready, 238 F.3d 69, 74-75 (1st Cir.
2001) (citation modified); see also NLRB v. Electro-Voice, Inc.,
83 F.3d 1559, 1572-73 (7th Cir. 1996).

Here, New Vitae laid off all supporters of the Union
before an initial contract was agreed upon.  Petitioner further
contends that, even after unit nurses are reinstated, support
for the Union may be chilled as a "natural and foreseeable
consequence of the employer's layoff of the entire bargaining
unit" and that this chilling effect would compound as time
passes.  With the passage of time, the likelihood of unit nurses
choosing not to accept reinstatement because they must seek
other employment increases as well.  See Electro-Voice, Inc., 83
F.3d at 1573; Pye, 238 F.3d at 75.  The Union has already lost
the support of one unit nurse who served as a union organizer,
whom petitioner reports does not desire reinstatement.  Without
immediate reinstatement of the Unit nurses, these harms would
continue, resulting in declining support of the Union and
impeding the Union's ability to bargain on behalf of the unit.
A win before the NLRB without preliminary relief here would
probably be a pyrrhic victory.

Reinstatement alone would not preserve the NLRB's
remedial power.  Subcontracting of the entirety of unit nurses'

work would impede the unit nurses' ability to support the Union. Failure to require good-faith bargaining would also impede the Union from representing the unit nurses.  All of these remedies work in tandem.  As such, New Vitae's offer to bargain without reinstating the unit nurses crucially prevents the unit nurses from supporting the Union in order to allow it to represent effectively the unit during the collective bargaining process.

New Vitae argues that there has not been irreparable harm because the unit nurses were laid off only after the Union refused to bargain over the layoffs and that there is no evidence that New Vitae refused to bargain.  This argument is without merit.  The decision to layoff unit employees and to subcontract was presented as a *fait accompli*, which preempted any meaningful opportunity to bargain over the decision.

The petitioner has made a clear showing that the Union and its members will suffer irreparable harm if preliminary relief is not granted.

Next, the court must balance the "competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Winter, 555 U.S. at 20 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (2008)); Sullivan v. Fairfield Parsippany, LLC, No. 2:24-cv-08413-ES-MAH, 2025 WL 40086, at *17 (D.N.J. Jan. 7, 2025).  In

doing so, the court "must take into account the probability that declining to issue the injunction will permit the alleged unfair labor practice to reach fruition and thereby render meaningless the NLRB's remedial authority." Sullivan, 2025 WL 40086, at *17 (citation modified); Small v. Avanti Health Sys., LLC, 661 F.3d 1180, 1196 (9th Cir. 2011).  Because the extended period during which the NLRB lacked a quorum has only recently come to an end, it is likely that the NLRB will be significantly delayed before it can make a final ruling on petitioner's Consolidated Complaint before it.  Without injunctive relief, the Union and the unionized nurses would continue to suffer the irreparable harms described above, including waning support and the likelihood that nurses would be unwilling to accept reinstatement because of the delay.  See Sullivan, 2025 WL 40086, at *18.  Without Union support and Union members, it is likely that any remedy ordered by the NLRB would be ineffective and moot.

In comparison, any harm New Vitae may suffer as a result of preliminary relief being granted is "inherently limited." Sacks v. I.N.S.A., Inc., No. 23-12368-MJJ, 2024 WL 2187012, at *8 (D. Mass. May 14, 2024) (citing Asseo v. Pan Am. Grain Co., 805 F.2d 23, 28 (1st Cir. 1986)).  Any order granting preliminary relief by this court will only last until the NLRB issues its final decision on the Consolidated Complaint before

21

it.  Id.; Sullivan, 2025 WL 40086, at *18.  Again, while this
process may be significantly delayed, New Vitae would benefit
from the experience and skills of the RNs that it previously
employed during that time.  Sacks, 2024 WL 2187012, at *8;
Sullivan, 2025 WL 40086, at *18.  New Vitae also would not be
prevented from lawfully disciplining its employees during that
time.  Electro-Voice, Inc., 83 F.3d at 1573; Sullivan, 2025 WL
40086, at *18.

Counsel for New Vitae further posits that the
preliminary relief requested by petitioner would be harmful
because it would preclude New Vitae from subcontracting any work
done by nurses.  Petitioner's counsel clarified during oral
argument that the NLRB was seeking to reinstate the status quo
as it stood prior to November 1, 2024, which involved
subcontracting some, but not all work done by unionized nurses.
In other words, preliminary relief would not require New Vitae
to cease all subcontracting.  This court finds that the balance
of equities tips in favor of granting the injunctive relief.

Finally, the court must consider whether an injunction
is in the public interest.  Winter, 555 U.S. at 20.  "In § 10(j)
cases, the public interest is to ensure that an unfair labor
practice will not succeed because the Board takes too long to
investigate and adjudicate the charge."  Small, 661 F.3d at 1197

(quoting <u>Frankl</u>, 650 F.3d at 1365); <u>Electro-Voice, Inc.</u>, 83 F.3d
at 1574. When the petitioner "makes a strong showing of
likelihood of success and of likelihood of irreparable harm,
[the petitioner] will have established that preliminary relief
is in the public interest." <u>Frankl</u>, 650 F.3d at 1365.
Petitioner has made such a showing.

     In summary, the petitioner has made a clear showing
that she is likely to succeed on the merits, that irreparable
harm is likely in the absence of preliminary relief, that the
balance of equities favors the petitioner, and that preliminary
relief is in the public interest. See <u>Starbucks Corp.</u>, 602 U.S.
at 345-46, 351; <u>Winter</u>, 555 U.S. at 20.

     Accordingly, the petition of Kimberly E. Andrews,
Regional Director of the Fourth Region of the NLRB, for
preliminary relief will be granted as described in the attached
order.